UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE DEVONN POLK,

        Petitioner,

                                     CASE NO. 2:06-CV-11899-DT

v.                                   JUDGE NANCY G. EDMUNDS
                                   MAGISTRATE JUDGE PAUL J. KOMIVES

BLAINE LAFLER,

        Respondent.[1]

_____/

**REPORT AND RECOMMENDATION**

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     B.    *Petitioner's Plea* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     D.    *Validity of the Plea (Claims I & II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          2.    *Lack of Factual Basis (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          3.    *Counsel's Sentencing Representation (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . 10
     E.    *Sentencing Claim (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

\*      \*      \*      \*      \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus.

II.   REPORT:

A.   *Procedural History*

       1.     Petitioner Andre Devonn Polk is a state prisoner, currently confined at the St. Louis

_____

[1]By Order entered this date, Blaine Lafler has been substituted for Jeri-Ann Sherry as the proper respondent in this action.

Correctional Facility in St. Louis, Michigan.

2.      On December 22, 2003, petitioner was convicted of armed robbery, MICH. COMP. LAWS § 750.529, pursuant to his guilty plea in the Genesee County Circuit Court. On January 16, 2004, he was sentenced as a fourth habitual offender to a term of 25-50 years' imprisonment.

3.      In January 2005, petitioner filed a motion to withdraw his plea or for resentencing, claiming that his plea was invalid because a factual basis for the plea was not established and because counsel had promised a more lenient sentence. Petitioner also sought resentencing, arguing that the trial court had incorrectly scored the sentencing guidelines. The trial court denied the motion on April 11, 2005.

4.      Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claims:

  I.      DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS WERE VIOLATED WHERE THE FACTUAL BASIS OF HIS PLEA WAS INADEQUATE.

  II.     DEFENDANT'S CONVICTION VIOLATES HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS BECAUSE IT WAS BASED ON AN UNFULFILLED PROMISE OF LENIENCY BY DEFENSE COUNSEL AND WAS THUS INVOLUNTARY.

  III.    DEFENDANT'S SENTENCE VIOLATES HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS BECAUSE IT IS BASED UPON IMPROPERLY SCORED GUIDELINES.

The court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack of merit in the grounds presented." *See People v. Polk*, No. 262553 (Mich. Ct. App. Aug. 4, 2005).

5.      Petitioner, proceeding *pro se*, sought leave to appeal these three issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Polk*, 474 Mich. 979, 707 N.W.2d 203 (2005).

2

6.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on April 24, 2006.  As grounds for the writ of habeas corpus, he raises the three claims that he raised in the state courts.

7.     Respondent filed his answer on November 1, 2006.  He contends that petitioner's claims first and third claims are not cognizable on habeas review, and that petitioner's second claim is without merit.

8.     Petitioner filed a reply to respondent's answer on December 7, 2006.

B.     *Petitioner's Plea*

Petitioner pleaded guilty pursuant to a plea agreement.  Under the agreement, petitioner agreed to plead guilty to one count of armed robbery involving two victims on two dates and to being a fourth habitual offender, in exchange for dismissal of three firearms charges.  The parties did not enter into a sentencing agreement.  *See* Plea Tr., at 4-5.  At the plea colloquy,[2] petitioner indicated that he had spoken with his lawyer about his case.  Petitioner stated that counsel had explained the case and possible defenses, as well as petitioner's constitutional rights.  *See id*. at 10-12.  The court explained to petitioner how the Habitual Offender Act worked.  *See id*. at 17-18.  Petitioner indicated that he understood that he did not have to enter a plea, and could demand a trial.  *See id*. at 18-19.  The trial court informed petitioner of the rights he would retain if he went to trial, and petitioner indicated that he understood his rights.  *See id*. at 19-30.  The trial court then engaged in an extensive dialogue concerning the promises made to induce petitioner's guilty plea:

> THE COURT:     Now one of the things I have to do is make sure that all the terms to your deal are out in the open, on the table and

---

[2]The trial court took several pleas from defendants in unrelated cases.  The court addressed each defendant individually.

3

official.  We can't have any under the table dealing, I can't have any back room deals.  So, I want to know if somebody made a promise to get you to do this, some kind of inducement that we haven't talked about yet out loud here in this courtroom.  Is there something else . . . ?

. . . .

DEF. POLK:          No, sir.

. . . .

THE COURT:          Now, as far as your sentence goes, gentlemen, I don't know anything about you guys, I don't know what they said you did.  I don't have a clue how I'm going to sentence you.  I don't know if I'm going to put you in jail, I don't know if I'm going to give you work release, I don't know if I'm giving you probation, I don't know if I'm going to lock you up as long as I can.  I don't know what I'm going to do.  Has somebody told you what I'm going to do . . . ?

. . . .

DEF. POLK:          No, sir.

. . . .

THE COURT:          Now, I've asked these kinds of questions because, well, did somebody tell you I was going to go easy on you . . .?

. . . .

DEF. POLK:          No, sir.

. . . .

THE COURT:          Now, I've asked those kinds of questions because you could also file an appeal and you could say that there was some other deal going on, you could say your prosecutor didn't mention one of the terms.  You could tell your–you could say that your lawyer promised you that I was going to let you go and I ended up locking you up somewhere.  And you could be absolutely right and it could be really unfair to you if it doesn't happen the right way, but if you haven't talk[ed] about it here, and you bring it up later on during an appeal, they can ignore you for that if they want to.  So, if you know of something else that's getting you to do this today, let's talk about it . . . .  Is there anything–is there something else?

. . . .

DEF. POLK:          No, sir.

*Id*. at 34-38.  Petitioner's counsel also indicated that there had been no other promises, threats, or inducements to get petitioner to plead guilty.  *See id*. at 38-39.  The court then established a factual basis for the plea, and accepted petitioner's guilt plea.  *See id*. at 39-44.

4

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v.*

6

*Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Validity of the Plea (Claims I & II)*

Petitioner first contends that his guilty plea was invalid because the trial court failed to establish a factual basis for the plea, and because his counsel gave him inaccurate advice regarding sentencing.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances.  *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).  The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea.  *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153.  A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.  Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]"  *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).  Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id*. at 508 (footnotes omitted).

7

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that,

8

but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828.  However, with respect

to the prejudice prong it is not enough for petitioner to merely allege that he would have insisted on

going to trial had counsel properly advised him.  As other judges of this Court have explained:

> In the guilty plea context the petitioner must show that there is a reasonable
> probability that, but for counsel's errors, he would not have pleaded guilty and would
> have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366,
> 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a
> prediction of what the outcome of a trial might have been. *Id*. at 58-60, 106 S.Ct.
> 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the
> petitioner must show that, but for counsel's errors, he would not have pleaded guilty,
> because there would have been at least a reasonable chance he would have been
> acquitted. If examination of the totality of the circumstances shows that the petitioner
> would in all likelihood have been convicted of the same, or greater, charges after a
> trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's
> conclusory allegation that, but for an alleged attorney act or omission, he would not
> have pleaded guilty is not enough to prove such a claim. Petitioner must show that
> there is a reasonable probability that the result of the proceeding would have been
> different. It is not sufficient to show that, but for counsel's alleged errors he would
> have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *Thirkield v.*

*Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*,

174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the

circumstances shows that the petitioner would in all likelihood have been convicted of the same, or

greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

2.   *Lack of Factual Basis (Claim I)*

Petitioner first contends that his plea was not supported by a factual basis.  Specifically, he

contends that the facts he admitted to in his plea colloquy establish that he acted under duress, and

thus his admissions were insufficient to constitute a factual basis for the plea.  This claim is without

merit.

9

First, "[t]he requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution[.]" *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995).  Because the writ of habeas corpus exists only to correct errors of federal law, therefore, a state court's failure to elicit a factual basis for a guilty plea does not state a claim cognizable on habeas review.  *See United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc); *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Coddington v. Langley*, 202 F. Supp. 2d 687, 702 (E.D. Mich. 2002) (Tarnow, J.).

Second, an adequate factual basis for the crime was established by petitioner's statements at the plea colloquy.  Petitioner admitted each element of the armed robbery charge, and does not dispute here that he did so.  Rather, he contends only that his statements at the plea colloquy also establish a duress defense.  However, a factual basis is not inadequate merely because it also discloses the existence of a possible defense.  *See People v. Rettelle*, 173 Mich. App. 196, 200-01, 433 N.W.2d 401, 404 (1988); *People v. Stubbs*, 59 Mich. App. 574, 578, 229 N.W.2d 854, 856 (1975).  Accordingly, the Court should deny the writ on this ground.

### 3.    *Counsel's Sentencing Representation (Claim II)*

Petitioner next contends that his plea was involuntary because it was based on a promise from counsel that he would be sentenced to a term of 7-9 years' imprisonment.  This claim is likewise without merit.

To the extent that petitioner claims counsel actually promised or guaranteed a specific sentence, his claim is contradicted by the plea colloquy, in which he stated that no one had made any promises to induce him to plead guilty.  Indeed, the trial judge was scrupulous in assuring that

petitioner understand that he would not later be able to claim that someone had made any promises regarding sentencing, and petitioner three separate times indicated that no such promises had been made. The trial judge also made it clear that he was making no promise regarding sentencing, and that he did not know how he would sentence petitioner. These statements by petitioner, made while under oath and in open court, carry a strong presumption of veracity. *See Blackledge*, 431 U.S. at 74. His subsequent allegation that counsel promised a specific sentence, which contradicts his sworn statements at the plea hearing, does not entitle him to habeas relief. *See Hastings v. Yukins*, 194 F. Supp. 2d 659, 669-70 (E.D. Mich. 2002) (Cleland, J.); *Kinard v. Renico*, No. 00-10362-BC, 2004 WL 3086900, at *6 (E.D. Mich. Dec. 23, 2004) (Lawson, J.); *cf. Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (court did not commit error in denying defendant's motion to withdraw plea where his allegations of coercion were belied by his statements at the plea hearing); *Jones v. Page*, 76 F.3d 831, 845 (7th Cir. 1996) (habeas relief not warranted where petitioner "made two clear and unequivocal statements at the plea hearing which belie the claim he is now making that he was pressured or coerced into pleading guilty."); *Otero-Rivera v. United States*, 494 F.2d 900, 902-03 (1st Cir. 1974) ("That the plea was 'coerced by defense counsel' is a conclusion unbuttressed by specific facts. Appellant originally told the court 'this is a voluntary plea,' a representation he cannot now so easily repudiate.").

To the extent petitioner claims that his plea was involuntary because it was based on counsel's erroneous advice regarding the sentence, as opposed to an actual promise, the claim is

likewise without merit.  As the Supreme Court has explained:

> Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be.  Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.
>
> That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann v. Richardson*, 397 U.S. 759, 770 (1970).  Thus, counsel's allegedly erroneous advice regarding petitioner's likely sentence does not provide a basis for habeas relief.  *See Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.     *Sentencing Claim (Claim III)*

Finally, petitioner contends that the trial court erred in his sentencing guidelines.  To the extent that petitioner challenges the trial court's scoring of the guidelines, the claim is not cognizable on habeas review.  As a general matter, a habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings.  *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987).  Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Petitioner's claim that the court improperly scored the guidelines range raises an issue of state law not cognizable on habeas review.  *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F.

12

Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also*, *Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review).

To the extent that petitioner claims counsel was ineffective for failing to object, the claim is without merit. Petitioner contends that defense counsel should have objected to the scoring of five points for Offense Variable 12 (OV 12). Under OV 12, the trial court is to score five points if either "[o]ne contemporaneous felonious criminal act involving a crime against a person was committed" or "[t]wo contemporaneous felonious criminal acts involving other crimes were committed." MICH. COMP. LAWS 777.42(1)(d), (e). Under OV 12, "[a] felonious criminal act is contemporaneous if both of the following circumstances exist: (i) The act occurred within 24 hours of the sentencing offense;

(ii) The act has not and will not result in a separate conviction." *Id*. § 777.42(2)(a). Petitioner contends that, because the two armed robberies were more than 24 hours apart, and because he did not admit to having carried a concealed weapon, this variable should have been scored as one point. However, contrary to petitioner's argument, although petitioner did not plead guilty to carrying a concealed weapon, he admitted during his plea colloquy that he in fact did so. *See* Plea Tr., at 41 ". . . and I had a pistol and I pulled it out . . ."). Thus, the trial court could properly rely on petitioner's carrying of a concealed weapon in scoring OV 12.

Further, such reliance would not have violated *Blakely v. Washington*, 542 U.S. 296 (2004). In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme. The state

13

in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed.  The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

However, Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing scheme at issue in *Blakely*.  Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence.  The maximum sentence is not determined by the trial judge but is set by law.  *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8.  "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790.  Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)).  Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty

14

which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction, therefore, contained all of the factual findings necessary to impose the statutory maximum on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely* even if the trial court made additional factual findings in imposing the minimum term of petitioner's imprisonment. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court

15

explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in

*Blakely*.  Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels.  First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power.  It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury.  Indeterminate sentencing does not do so.  It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty.   Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion.  But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme,

under which the maximum is established by statute and only the minimum term is based on judicial

factfinding, does not violate the Sixth Amendment.  *See Bellamy v. Curtin*, No. 1:06-CV-599, 2007

WL 527988, at *4 (W.D. Mich. Feb. 14, 2007); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL

3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006

WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Toothman v. Davis*, No. 05-CV-74561,

2006 WL 2190515, at *2 (E.D. Mich. Aug. 1, 2006) (Edmunds, J.); *Drohan,* 475 Mich. at 164, 715

N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; *cf. Williams v. Benik*,

No. 04-C-966, 2005 WL 300379, at *2 (Jan. 26, 2005), *vacated in part on other grounds*, 2005 WL

331743 (W.D. Wis. Feb. 8, 2005) (upholding state's indeterminate sentencing scheme under

*Blakely*); *State v. Rivera*, 102 P.3d 1044, 1054-55 (Hawai'i 2004) (same); *Commonwealth v. Junta*,

815 N.E.2d 254, 262 n.11 (Mass. Ct. App. 2004) (same); *Commonwealth v. Smith*, 863 A.2d 1172,

1178 (Pa. Super. Ct. 2004) (same).

Thus, the trial court could have properly relied on petitioner's act of carrying a concealed weapon both as a matter of scoring OV 12 and under *Blakely*. Thus, petitioner cannot show that he was prejudiced by counsel's failure to object to the scoring of OV 12, and he is not entitled to habeas relief on this claim.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing

17

party may file a response.  The response shall be not more than five (5) pages in length unless by

motion and order such page limit is extended by the Court.  The response shall address specifically,

and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 3/26/07

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on March 26, 2007.

s/Eddrey Butts
Case Manager